Mr. Freeman from the U.S. Department of Justice, there's a letter for application of the Committee on the Judiciary.              Fourteen. Fifteen. Sixteen. Seventeen. Eighteen. Nineteen. Twelve. Thirteen. Twelve. Good morning, Your Honor. May it please the Court, I'm Mark Freeman for the Department of Justice. The district court in this case denied the government's request for a stay pending appeal so that this court could have an opportunity to review the important questions presented. The court denied that motion even though it's clear that once the grand jury secretive issues are disclosed, they can't be undisclosed. The bell can't be unrung after the fact. The court denied that motion nonetheless because technically she thought she was right on the merits. But as we've explained in our motion, the district court committed at least two serious errors of law in granting the request for this motion. You start with irreparable harm. It is the case, however, that if we agreed with the district court on the two problems the merits are just about to get to, that irreparable harm is not that important. Well, I disagree with that completely, Your Honor. First, our contention in this case... I mean, if we thought that you were likely to lose on the merits, what significance is irreparable harm? Well, I agree with you as to stay. We have to show a likelihood of success in the merits. If you don't agree that we have that, then we don't get to stay. But in terms of the irreparable injury, this is the disclosure of grand jury information from a massive federal criminal investigation that concluded only eight months ago. There are only 25 pending criminal matters that come out of that proceeding. There are 2,800 criminal grand jury subpoenas that you can actually issue. And which of those relates directly to the redacting material? How does that relate? Well, that's exactly the... Yes, and that's the point on our second argument, which is that that's the committee's burden to demonstrate that. So, I project to you that the district court's findings, plus the special counsel's support on you too, plus what the committee said in supplementing its statements during the oral argument, seem to specify why it thinks certain material is necessary for the committee to proceed. And you have said it's not enough repeatedly. But when counsel was asked by the district court what test are you relying on and what authority, counsel provided nothing. This is government counsel. I think the test that we're relying on... Counsel for the Department of Justice. Yes, Your Honor. The test that we're relying on, as we explained very clearly in the district court, is the test in Douglas Oil itself. Yes, and what did Douglas Oil say? It says you have to show a need to avoid a specific possible injustice in another judicial proceeding, that you have to show that the interests in secrecy are outweighed by the interest in disclosure, and that the disclosure can be tailored to that particular injustice. And the district court found that that test had been missed. Your Honor, the... Now, why was the district court clearly a company of committed findings? The district court committed the same error of law that this court found in the in-race sealed case decision in 1986, that the Supreme Court found in Douglas Oil. There's no doubt that a district court that makes a reason to particularize fact-specific findings... And what specifically is the error? The error is granting the release of grand jury information on the premise that the applicant needs all relevant information. But that is not what the district court found. I'm sorry. The district court found, in terms of the committee's request, as tailored, that it had met its purpose. Your Honor, the tailoring here is only that they asked for all grand jury redactions in the entire Mueller report. No, they didn't. You keep saying that, but that's not what they asked for. Specifically, they were quite clear as to what they were seeking, to the extent they could surmise what might have been said and by whom to the grand jury. Your Honor, if I may, respectfully, what the committee came in and said is, we think there may be things in this grand jury information in the Mueller report that might bear on a theory that we would put forward for impeachment. Actually, they were much more specific than that, Counsel. You're more familiar with the record than I am. Your Honor, yes, and that is what they said. Their first submission was... And they all went down the list of witnesses who they thought could provide this necessary information. Yes, Your Honor. The first witness they identified was Don McGinn. And as it turned out, Don McGinn never testified in front of the grand jury at all. He was not the only one. But that was the primary thing in their petition. Counsel, I mean, I'm reading the papers. You're reading the papers. It was not the only thing. And at least in Douglas Oil's case, the district court made these findings. And I'm unclear what standard the department is saying Douglas Oil or other authorities required. When, indeed, I thought, and maybe I'm mistaken, Counsel's department backed off in order to do that. But who was expected to know who had testified, the scope of their testimony, and therefore be able to relate specifically why that witness's testimony was necessary? Well, I don't think so, Your Honor. That has been the department's submission all along. Our view is that this works. It's your statement. I'd like to address the premise. But how could they? This company is practically a secret, and they don't know it. How can they say more than they did? That is exactly the proposition the Supreme Court rejected in Abbott & Associates, where the Attorney General of California made exactly that point. Look, the way this works with any normal judicial proceedings, right? But that case, it was different, Counsel, and you know that. I'm just trying to understand as a conceptual matter. Yes. Where grand jury testimony is secret. Yes. The person or entity seeking the information doesn't know who testified or specifically what they said. Yet they know, based on the special counsel's report, that there were certain elements that were unavailable to it, and it deferred on making any specific findings of criminal activity. Right. And that is no different from how it works in any normal proceeding. To answer your question directly, how is a party to know that there is relevant grand jury testimony? Well, first, grand jury secrecy does not find witnesses. So what often happens in these cases, in a criminal case or a civil case, is a party comes in and they say, well, I know this person tells me that they testified to the grand jury on this fact. Now there's testimony to the same factual question in this judicial proceeding, and I want to use that specific testimony to counter that particular population. So you're calling for a redaction by redaction review? Yes. I think they have to, Your Honor, and I think it's telling that the first time and the only time that Judge Howell pressed counsel on that, they agreed that they didn't need that information, and yet the district court gave them that information anyway. That is not how Rule 60 is supposed to work. And you've used the phrase normal proceeding several times, but this isn't a normal proceeding, is it? I mean, the premise of the Mueller report, as I understand it, is that for allegations of presidential misconduct, those were not to be taken up by the Department of Justice. They were taken up by the House of Representatives. Now, why doesn't that change the nature of our inquiry here? Well, I think it does change the nature of the inquiry in that we're not dealing with a judicial proceeding in the sense of... Well, we'll get to that separately. Let's imagine we disagree with you. Let's imagine we take McKeever applies here. Okay. I know you'll get to that. Yes. But on that premise, isn't this different in terms of showing the particularized need necessary because the Mueller report is never going to identify the allegations of presidential misconduct? Well, no, I don't think that's right at all, Your Honor. In fact, the point of the Mueller report was to identify that. I think the Mueller report made that clear. Well, I mean, it was clear from the Mueller report that any allegations of presidential misconduct were to be handled by the political branches and not by Congress and not by the Department of Justice. Right. Any legal ramifications, any legal consequences for it. Yes. But the point of the Mueller report is I think... And that's sort of the history here, right? The counsel, the special counsel, they create fact-finding, they engage in fact-finding, and they pass it along to the House of Representatives. And the point I'm trying to make is that's what the Mueller report did. On the obstruction of justice question, the Mueller report is 186 pages of detailed, detailed factual recitation. There are only five redactions in that entire section, one of which counsel gave up at district court saying we had no need for. Are you suggesting the Mueller report didn't have the same objective in line with the Russian interference? No, no, of course it did. And on the Russian interference sections, hundreds and hundreds of pages. And there are some substantial number of redactions, as you would expect. But because, precisely because the House of Representatives has all of this information in front of it, it's incumbent upon them, as it would be incumbent upon any litigant in a civil proceeding, to come forward in any judicial proceeding, if that's the hypothesis, to come forward and say, okay, I've read the 186 pages, including the 181 pages, with no redactions whatsoever, and I am unable to establish this one particular point, and that point is relevant to my article of impeachment or my cause of action, and I need that information for that reason. Nothing like that was shown in this case. Why wasn't it proper that people may have misstated information, which the committee identified, and that in terms of presidential motivation, the information that the committee identified was quite specific as to what it needed, although, as I've said, it didn't know who testified or specifically what they said to the grand jury. And on that point, and I'll just repeat this, that is no different than the position of any litigant applying for a 60-order, that's the whole point of grand jury secrecy, and that's the conundrum always states under Rule 60. So when is the result of that analysis that the district court abused its discretion in ruling that it could, under the rule, with the exception of judicial proceedings, kind of lay their argument on that issue? Yes. Abuse of discretion? Yes, and let me explain why. If a party in a regular trial, criminal trial, and let's assume a big criminal trial, a trial arising out of demolition, a trial of historic proportions, someone comes to this court and says, I'm a defendant, my liberty is at stake, I think a witness who is testifying in here, I don't know, but I want to make sure they didn't testify inconsistently in front of the grand jury. Now, no one's told me I have reason to think that, but I want to make sure of that because this is really important. That motion is denied under Rule 60. But if they say, we have evidence from prosecution brought successfully by the department that people have misstated things. As to those people, then you would have a particularized need. But they have not made that showing here. But they have made the showing, haven't they, that other people may have. Sure. I mean, there was a person, Michael Cohen was convicted of lying to Congress. Roger Stone was just convicted of lying to Congress. But they didn't come in and say, we believe that we have testimony in front of us that is undermined by testimony of another witness. What they said was, other people have lied to Congress, and so we think we should get to the evidence just to make sure no one else gets. You would never accept that from a witness, from a litigant, in a criminal case or in a civil case. That's not how Rule 60 works. And indeed, that's exactly the error that the Supreme Court found in Douglas Oil. In that case, there had been a criminal antitrust investigation and a grand jury proceeding, and then a party came in and said, well, we'd like the same information in order to establish a civil cause of action. Mr. Foon, I'd like to take a step back and ask you about our jurisdiction in this case. So, although this hasn't been raised, we, of course, have an obligation to make sure that we have jurisdiction. And so in the Supreme Court's decision in the Judge Nixon case, right, the Supreme Court held that they could not review impeachment decisions of the Senate, and they also suggest that it would be inappropriate for the court to assist or interfere with impeachment proceedings. So, is our involvement in this, I mean, is interpreting 6E, the judicial proceeding, wrong with that, to include impeachment? Would that impermissibly involve this court in an impeachment proceeding? Well, let me answer that in two ways. We've not made that argument. If it would be impermissible for this court to interfere, then it was impermissible for this court to grant the application. Well, we have to make sure we have jurisdiction, so, yeah. Well, right, but this court would always have jurisdiction to decide then that the district court lacked jurisdiction. But I do want to say, we are not advancing that argument. The district court issued an injunction to the Department of Justice to issue, to reveal grand jury information to the House of Representatives in five days. We certainly have both standing and jurisdiction prospects to seek a remedy from that order, and we think that it's wrong because we don't think, but I think the premise of Your Honor's question, that an impeachment proceeding in the legislative branch is a judicial proceeding in defense of Rule 60 of the Federal Rules of Procedure. I know you didn't argue it, but I think it's an interesting question. Could you address it, whether there's a jurisdictional bar to us looking at an impeachment proceeding? So, again, this issue is not addressed. I know, but that's just your outpouring. But I think the answer to that question is there isn't a jurisdictional bar. The committee came in under Rule 57.6 of the local rules of the district court, which provides that any person, a newspaper, anybody may come in and ask in a pending case, by supposition this is the district court's provision of the grand jury, and ask for an order. And once the district court issues that order, then, of course, the Department of Justice with custodian of grand jury information has the right to seek review of that order. It would make no sense that the court could grant it, because we couldn't seek review of it. That's right, it doesn't go to your review. It goes to the district court that's fighting the issue in the first place. I agree. And we have not challenged, and this is if the New York Times, the Washington Post, come in and ask for grand jury information, district court reviews that under Local Rule 57.6. We've not challenged that that is a miscellaneous action properly heard by a district court, which could be the result. But the suggestion is this is an impeachment inquiry, and that changes the way we should look at it. I think it's our involvement that is secure. I think if the conclusions that the federal judiciary, let me put it this way, we do, as the court is well aware, have concerns with the standing of the House of Representatives to file civil actions against the executive branch to raise arguments and assert error in the exercise of executive power. We think those are not Article III cases or controversies of the kind the courts have historically adjudicated. That's not the case, that's many other cases pending in district court and in the courts of appeal. But if we do think that there are Article III problems with the House of Representatives trying to create cases or controversies in the federal courts, we've not advanced that argument here. I agree that the court would need to decide if it wanted to, if it thinks there's a serious question there. And if there is, we're speculating that's just another reason to grant the state an appeal and hear the important questions in this case. Now, I do want to go and just finish the thought on particularized need. I'm not aware of any case, any case, in which the court has held that a need, just a stated need, to see all relevant evidence or to complete the story or to investigate fully, these are all the phrases from the district court opinion in pages 66 and 69, has been inadequate showing under Rule 6E3E1. It just is not. Now, I think the committee's argument is that's basically not fair to them because how are they supposed to know this is an impeachment proceeding, they're supposed to be conducting an investigation, how could they know what to look for? But respectfully, I think that just breaks the premise about whether they're in the right bucket under Rule 6E at all. As we've explained, a judicial proceeding in the sense of Rule 6E is a proceeding in front of a court, federal court, state or local court. Now, I think that... No, Mr. President, help me here. In your view then, for the committee to at least make a better argument, the department's position is it must be able to tell the district court, a community district court of the jurisdiction, that we want a grand jury testimony of witness A because witness A testified at events 1, 2, and 3, which the committee is investigating in terms of determining whether or not to file charges. And... Is that the kind of showing? Yes, and it would have to say that we are unable in our own authority to obtain the information about events 1, 2, and 3. So in... Well, I'm not going to add that, all right? Because there's several ways to, you know, skin a cat. But what I'm trying to understand is then the department's position is that where a witness testifies for the grand jury, unless that witness reveals voluntarily the nature of his testimony, you know, either in interviews with the media or otherwise, in other litigations, then a party has no basis under a school of 61E exception for judicial proceedings to obtain an order from the district court. I just need to be clear, because you suggested that. Yes, that is not the only way. But it has to be... Give me another way. It has to be that particularized. Give me another way. If the witness doesn't voluntarily disclose... The committee points to something in the Mueller report indicating that the grand jury had in front of it a particular document, which the committee is unable to obtain to its own investigative procedure. So that example was taken from this court's decision in 1986 in the Ingray Steels case decision. In that case, there was a SEC enforcement action in the Tudson District of New York. The SEC filed an affidavit saying, we want pre-existing grand jury material because we need to get this information. And this court said the generalized means was not good enough. But what might have been good enough was there were a couple documents that the grand jury had that were illegible for which the SEC couldn't otherwise obtain. That's how this works normally. Well, normally. And Judge Griffith's question as well as Judge Rouse's question suggested it's not necessarily a normal proceeding for all the reasons that the courts have identified. And that's why I'm trying to understand whether Douglas Oil was it. The courts were really concerned about a phishing exposition. You know, you just can't have everything because it's relevant. Rather, there's a burden on you to show particularized means. But I didn't understand the court to be saying that it had to go so far to identify witness A as to 1, 2, and 3. And if you want to add to my hypothetical, that the committee was unable to obtain that information by other normal discovery means. So let's just state, and I think we're in agreement, that that is not how normally Rule 60 works. And the argument is that there ought to be something different under the Douglas Oil test for impeachment proceedings. But I didn't see anything in the history of Rule 60 or anything you cited to me that goes quite as deep as you're requiring in an impeachment setting. Right. In the impeachment setting, that's the premise that I want to try to get to. Since you pointed out Douglas Oil, can you point out something particular about Douglas Oil? In Douglas Oil, the court also said specifically, the district court there granted the release of grand jury information but said, attorney's eyes only. No copies may be made. You have to return the information to the Department of Justice when it's done. It can be only used for impeachment or refreshment of recollection of witnesses during trial or deposition. Now that is an exercise of the explicit textual power under Rule 60 to impose conditions on the time, manner, or any other condition the district court may impose on the release of grand jury information. Well, that was explored by the district court here as a committee volunteer to its legal counsel that it was willing to discuss this. Initially, reveal only to counsel to deal in a staid manner. Right. And the department didn't suggest that that was an acceptable way to proceed. It was argued that it isn't a judicious proceeding at all. But if I may, just on this point, I don't think my friend will agree that a district court could impose the kind of conditions that were issued in Douglas Oil on the House of Representatives or the Senate in the conduct of an impeachment proceeding. Well, that's a pretty fundamental... Yes, it is. And I thought that's where your irreparable harm argument came from. Yes, and on the irreparable harm argument, in addition to just generally the fact that the information on the issue is being disclosed, this court has held that once information crosses the event horizon of Congress, that a federal court lacks any authority to control it. And that is both an irreparable harm argument as to why we get a say in this case, but it's also a really fundamental question about whether Rules 60 is meant to deal with congressional proceedings at all. I'm not following your argument about how that relates to the particular items you just showed. Yes. Are you saying that that increases the burden for... No, no. I'm not saying that it really is a particular item. My point is that it is like the fact that the particular item... I'm hearing the court say that the particular item meeting seems like a mismatch for what Congress needs in an impeachment proceeding. And I think that the reason why it feels like a mismatch is that we shouldn't be in this bucket at all. And... Well, let's stay in the bucket, though. We'll talk about it. We'll get to... Okay, but the reason I was making this point about constitutional limitations on the authority... I see. Because at your point that's an argument for why it's not in this bucket. Yes, because that's a fundamental aspect of practice under Rule 60 is that if a district court allows grand jury information to be released... See, I would have thought your argument would have been if you're in that bucket that it's an increased burden on the House and the committee to show particularized need because once it's out you're never going to get it back. If you accept all of the threshold premises, which I don't, but if you did, then yes, I would think that because it's irreparable once you cross the event horizon. But I think that, again, we have 60 as a statute. The fact that the district court's basic error in this case was approaching the question as though it was sufficient to find that Congress in some sense in the constitutional sense acts as a court or that it actually acts as a form of judicial power. I have questions about that. You don't need to quarrel with any of that to conclude that we're interpreting 60 as a statute and that the question is whether this is a judicial proceeding within the meaning of Rule 60. There are many statutes and rules that regulate trials and judicial proceedings in courts and judgments and convictions. But no one would say, I'm sorry. So you think it's a different question whether impeachment is a judicial power versus the statutory standard of whether impeachment is a judicial proceeding? Absolutely, yes. And just let me give you an example. This court said in the Bates case in 1980 that a Federal Maritime Commission proceeding, an executive hearing in front of the Federal Maritime Commission, was not a judicial proceeding within the meaning of 60. And yes, that's, we know from Justice Thomas's opinion in Federal Maritime Commission versus South Carolina Courts Authority that for purposes of the 11th Amendment in UBG, proceeding in front of the Federal Maritime Commission is the same as a district court lawsuit. So there you have an example of for constitutional purposes, it's a judicial proceeding, it's a trial, it's a suit. But for Rule 60 purposes, even though there's an adjudication, even though there are people wearing robes, even though there are judgments that are enforceable with legal consequences, it's not a judicial proceeding. We know in the context of Rule 60 that what we're talking about is courts. There's only one other rule in the Federal Rules of Criminal Procedure that uses the phrase judicial proceeding. That's Rule 53, and it has to do with broadcasting of video from courtrooms. So what the Federal Rules of Criminal Procedure are talking about is procedures in front of courts, state and federal courts. In fact, that's the definition in Rule 1 of the Federal Rules of Criminal Procedure of judge. It doesn't define judicial proceedings, but it defines judge. Federal judge, state judge, or local judge. Isn't there an argument you should be making via a bank court and not a panel that has to follow McKeever? So let me address that, Your Honor. I agree with you that if the court thinks that Haldeman and McKeever in combination decide the question, then it's off the table for this panel. I don't think that's right, and let me explain. Yeah, explain why you don't think that's right. I mean, however you read McKeever, the result is clear, right, that an impeachment proceeding gets mandatory materials. They would add it different ways, whether there's inherent authority or whether it's under the judicial proceedings, but that's the gist of it. I mean, it's extraordinary for us to... I don't think that would last very long. Well, I'm sorry to hear that, but I don't think that's right. I mean, everyone understands that Haldeman was a petition for mandamus or prohibition by two instances. The court held there was no clear or undetectable right to have the information blocked when it's released to Congress. I think we should start from the premise that the denial of mandamus is not affirmative authority for the opposite proposition. Then, you know... But what was the reasoning? Well, and that's... What was the district court's reasoning? What did Judge McKinnon say? Well, the judge surrendered this report. I'm sorry, but I thought that the court appealed to Judge Haldeman. Judge McKinnon filed a concurrence in part, but the on-off court's pro curiam order, which was issued the same day that the case was argued, said we're in general agreement with the district court's treatment of the issues. And we feel no need to elaborate. And we feel no need to elaborate on the general treatment of these issues. And I think even Judge Srinivasan, in his defense in McKeever, said, acknowledged that there's no meaningful analysis of Rule 60 in the on-off court's pro curiam order itself, and that, as the majority pointed out, the underlying district court proceeding itself is ambiguous as to its rationale. Well, he's certainly correct in that sense, that if you look at the Alderman decision by this court, you're not going to find it. But that decision says we agree with Judge Sirica's analysis, and we find no need to elaborate. And Judge Sirica goes into considerable analysis. Judge Sirica, the court says we are in general agreement with the handling of these matters after setting a number of questions including whether a grand jury can issue a report and various other things. It's more in general agreement, and we're denying the petition for writs of mandamus approves. And the court thinks that's a plenary holding on the merits of this question, and I agree that the judicial proceeding is not in front of you. But respectfully, I just don't think it is that. This is an important question that no court of appeals has ever issued a written decision on. And I think the... When you say clearly held, and I thought that adverb was interesting. If you put it everywhere, no court has clearly held. Well, write the adverb. The adverb was meant to refer to the mandamus standard. But you say that no court has clearly held. And I thought, well, and McKeever was just exploring with you. He interpreted it. I agree that what McKeever did was characterize the basis for the denial of merit.  think that the court can tell me otherwise. I think we're looking at just a couple of sentences here and we're all looking at the same information. But my guess is that the en bas court in Haldeman, having had an issue of that importance, decided in three days that she was procuring an oral argument. You said that twice now. Maybe it's because it was so clear. It could have been, but look at the order. It's a few paragraphs on a per curiam basis and it makes no law at all. My guess is the court was trying not to establish certain precedent but was saying these petitions should be denied. The court may know better than I do. What's the importance of Haldeman that it wasn't opposed by the Department of Justice? It's hard to know from the en bas court's order. They do discuss that. It was not opposed. This is the very first case in which this question is squarely presented in an adversarial posture. For the reasons I discussed earlier, you look at the text of the rule, you ask yourself whether it would be constitutional for the rule itself to operate in the manner that the House suggests. Normally constitutional rule would be the rule to avoid those consequences. I don't think my friend will tell you that he agrees. The district court here told the Senate that the information can only be used for impeachment or no copies can be made. I don't think   court has the authority to do  I don't think the district court has the authority to do that. I don't think the district court has the authority    I don't think the  court has the authority authority to do that.  don't think the district that. I don't think  district court has the that. I don't think   court     the district  has the authority to the    that. I don't think  don't think the district  has the court has the authority   that. to  that. I don't think authority to do that.    the authority  do that. I don't  authority to do that. We asked for it. We asked the speaker of the house. We asked committee members to see it. We were told no. I'm not surprised given their new position that is inconsistent with many decades of practice. I think their position is they can't show it and rule 16 is punishable by contempt. There is no accommodation here. The accommodation we were offered was we'll give you other material. We'll show you other materials. It is a farce. For example, we've never been given 302s from Mr. McGann. We didn't know them. We didn't know Mr. McGann. We were given none. 302s were very heavy  material. I apologize your arms. I just wanted to make absolutely sure that yes, we    light of the White House council's letter, we continue to get enough material. We continue to get enough material. We are working with the commission. There is no accommodation being done here. They are worried about being placed in contempt. To Jeff Griffith, absolutely yes, it would be to counsel my office and counsel connected to litigation counsel for the judicial situation. I would like Mr. Green to address that. I'm interested in guessing your situation of possibly being placed in contempt. The Manafort situation shows so clearly that there is evidence that very sadly that the president might have provided untruthful answers. This therefore is obviously a key part of a possible impeachment inquiry. Anything further? I'm sorry. Anything further? Give me one second to look quickly at my notes please. I think that's it. Thank you so much your honor. Counsel for the department. Thank you your honor. Let me start with a factual point about access bias that the district court had to unredacted versions of the report. The district court did not have volume one of the report. The district court did not see any of that information. The committee asked us to provide that information to the district court. We did not oppose that. The district court  take us up on that. We did provide one declaration that went through the five redactions in volume two. That's what she had in volume two. I don't follow. The statement from the attorney general. She reviewed the statement from the attorney general stating what was in the grand jury testimony that had been redacted. I'm not aware she had access to anything. She looked at the documents that the attorney general had submitted. I believe that's a reference to the Weinheimer declaration that walked through the basis of the five redactions in volume two. Nothing else in volume one. When the district court recited that they need to investigate the case, she didn't have that information. The next thing I want to address is to describe this question about the district court. I believe that was the offer to give it to counsel. We did agree that the district court would look at the case. We never in agreement that staff had it. Partly because of the reasons I discussed before. As a constitutional matter, once that information goes across the event horizon of Congress, there's no way that the court could regulate the investigation. The reason for grand jury secrecy is slight and intimidation of witnesses.   on that point, I don't think that's right. Those are two of the reasons for grand jury secrecy and intimidation of witnesses. I'm giving you the opportunity to tell me what more is involved. There are at least two other fundamental reasons for grand jury secrecy. One is to ensure the candor of future witnesses to other grand juries. I agree she addressed it. But I don't think it was very persuasive.  understand you may not agree with her, but the question was she's clearly erroneous in making that finding. I do think it's a question of law if what she said is there's no reason for grand jury secrecy and so they can have all relevant questions. In the context that she's been dealing with, this is not go look at anything you want. That's what I'm trying to get across. It's not a fishing expedition. Given the Mueller report and the specifications, which I understand you say was not enough, but there was specification that the district court found was adequate. If I may, I think the fact that there was an extremely detailed Mueller report against the disclosure rather than in favor, I think the showing that they had an interest in investigating fully to complete the story, those are    district court found was not adequate. I actually couldn't tell you what it was. It would have to be a case by case analysis. It's not a fishing expedition. We don't know what particular case analysis was. That would have to be a case by case analysis. That would have  a case by case analysis. That would have to be a case by case analysis. There should be no question about that.  would have to be a case by case analysis. That would have to be a case by case analysis. There should be no question about that. There should be no question about that.  that  be a case by case analysis.   should be a case by case analysis. That should be a case by case analysis. There should be no question about that. In other words, the House does not want to return a charge where the evidence would not support it. That is the standard prosecutorial requirement. Normally you have to show that there is a basis in rule 60 to turn over this information. That circles back to my original point. In order that the district court issues that you would hold the House or the Senate in contempt of court for not following the district court in a rule 6 case. I'm interested in your thoughts about that. I agree that this court has that authority. I've never seen in victim use practice where the court decides the merits of an appeal on the basis of stay motions. You should be prepared to proceed on any expedited schedule the court thought was appropriate. The last thing I just note is my friend had a colloquy with Judge Rogers regarding irreparable injuries. Judge Rogers said what is the reason why we  grand jury secrecy. I want to push back on that. That is not how grand jury secrecy normally works. We wouldn't have to show you there was a particular criminal proceeding jeopardized by that order. There's a reason why we protect grand jury secrecy. There's another which is part of what the grand jury does is investigate and sometimes conclude people should not be convicted. One of the points of grand jury secrecy is to protect the rights of the innocent. I have not seen the grand jury information so I can't represent to you in detail what it includes. We don't require the very divulgence of the information to determine there's no irreparable injury. This is an important question. The court has substantial arguments on the merits. I submit that in any regular circumstance the court would grant escape and reappear. We respectfully ask you to do so.
judges: Rogers, Griffith, Rao